IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-01032-RBJ

ADAM GIESE and
BLACK DIAMOND WELL SERVICES, INC.,

    Plaintiffs,

v.

JULIANNA SAVONI GIESE,
JAMES W. GIESE,
JAMES W. GIESE, PC,
SORONEN, DONLEY, PATTERSON, CPA'S PC, and
JOHN DOES 1-10,

    Defendants.

---

## ORDER

---

This matter is before the Court on defendants' motion to dismiss plaintiffs' third amended complaint. Defs.' Mot. to Dismiss, ECF No. 39; Third Am. Compl. and Jury Demand, ECF No. 22. For the reasons below, the Court GRANTS that motion.

### I. FACTS

Plaintiff Adam Giese is the sole owner and employee of Black Diamond Well Services, Inc. ("Black Diamond")—a Colorado-based oil drilling business and the other plaintiff in this action.[1] ECF No. 22 at ¶13, 15–16. He alleges that his mother (defendant Julianna Giese), his father (defendant James Giese), his father's law firm (defendant James W. Giese, PC), an accounting firm (defendant Soronen, Donley, Patterson, CPA's PC ("SDP")), and numerous

---

[1] For ease of use, the Court will refer to Adam Giese as the sole "plaintiff" in the "Facts" section of this Order.

1

other unnamed individuals (defendants John Does 1–10) stole hundreds of thousands of dollars from him and his company during a roughly four-year time period from September 6, 2011 through August of 2015.[2]  *See generally* ECF No. 22 at ¶¶13–90.

Summarized briefly, plaintiff alleges that defendants appropriated his money after plaintiff allowed his mother, Julianna, to perform bookkeeping for Black Diamond. *See id.* at ¶¶22, 24. Plaintiff alleges that after he gave Julianna this role, she abused her access to plaintiff's finances, and that defendants began to perform numerous transactions, transfers, withdrawals, and other allegedly illicit activities with plaintiff's money in plaintiff's name for defendants' sole benefit. *See, e.g.*, *id.* at ¶¶74–90. Plaintiff discovered these alleged thefts and the extent of his loss only after his debit card was declined in August of 2015 while traveling in South Dakota with his girlfriend. *Id.* at ¶¶28–30. After he discovered that his accounts had essentially been liquidated, plaintiff confronted his parents, which quickly fueled acrimony among the parties that appears to continue to this day. *See, e.g.*, *id.* at ¶¶38, 84, 87–89.

Procedural History

Plaintiff initially filed suit against all defendants on May 6, 2016. Compl., ECF No. 1. Ten days later on May 16, 2016 plaintiff amended his complaint. First Am. Compl., ECF No. 11. A few weeks later on June 7, 2016 plaintiff amended his complaint for a second time. Second Am. Compl., ECF No. 14. Shortly thereafter, defendants Julianna Giese, James Giese, and James Giese, PC moved to dismiss plaintiff's second amended complaint. ECF No. 16. Defendant SDP also filed a motion to dismiss of its own on August 8, 2016. ECF No. 30. While those motions were pending, plaintiff filed a motion to amend his complaint once again. ECF

---

[2] Plaintiff contends that defendants' (or at least defendant Julianna Giese's) allegedly illegal behavior began as far back as September 6, 2011. ECF No. 22 at ¶75. However, from plaintiff's third amended complaint, defendants appear to have performed the vast majority of their allegedly illegal activities during a one-and-a-half years' time period running from February 2014 until late August 2015. *Id.*

2

No. 21. The Court granted that motion and subsequently mooted defendants' motions. ECF Nos. 35–36.

On June 30, 2016 plaintiff's third amended complaint became the operative pleading. ECF No. 22. In that complaint, plaintiff asserts fourteen claims for relief: (1) a claim for injunctive relief against his parents; (2) a claim for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, against his parents and James Giese, PC; (3) a claim for a violation of Colorado Organized Crime Control Act ("COCCA"), C.R.S. § 18-17-101, *et seq.*, against his parents and James Giese, PC; (4) a claim for "outrageous conduct" against his parents and James Giese, PC; (5) a claim for negligent misrepresentation against his parents; (6) a claim for "fraud/misrepresentation/duty to disclose" against his parents; (7) a claim asserting that plaintiff's parents breached their fiduciary duty; (8) a claim asserting that plaintiff's parents breached their relationship of trust and confidence; (9) a claim for defamation against plaintiff's parents; (10) a claim for negligence against James Giese, PC; (11) a claim for negligent hiring/supervision against James Giese, PC; (12) a claim for negligence against SDP; (13) a claim for civil conspiracy against plaintiff's parents and James Giese, PC; and (14) a claim for "joint and several liability" against all defendants under C.R.S. § 13-21-111.5(4). ECF No. 22 at ¶¶91–166.

On October 25, 2016 defendants Julianna Giese, James Giese, and James Giese, PC moved to dismiss plaintiff's third amended complaint. ECF No. 39. Their motion has been fully briefed and is ripe for review. *See* ECF Nos. 39, 44–45.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493

3

F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681.  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard.  *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III. ANALYSIS

The moving defendants argue that plaintiff's RICO claim should be dismissed, and if it is dismissed, that the remaining claims should be dismissed for lack of federal jurisdiction.  *See generally* ECF No. 39.  I agree with both arguments.

### A. RICO.

Defendants argue that plaintiffs' RICO claim must be dismissed for failing to state a claim.  *See id.* at 5–14.  They give three reasons why: (1) plaintiffs failed to meet the pleading standards of Federal Rule of Civil Procedure 9(b); (2) plaintiffs failed to sufficiently plead the "continuity" requirement of a RICO claim; and (3) plaintiffs failed to adequately allege participation in the alleged racketeering scheme by either defendants James Giese or James Giese, PC.  *Id*.  I find the second argument to be dispositive and therefore do not address arguments one and three.

#### 1. **The "Continuity" Requirement of RICO.**

To state a claim for a RICO violation, a plaintiff must allege, among other things, the "continuity" of the defendants' alleged racketeering scheme. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241–42 (1989). As the Supreme Court explained,

> Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements.

*Id.* (internal quotation marks, citations, and emphasis omitted). Given that definition, courts since *H.J.* have addressed whether a plaintiff sufficiently alleges this requirement by analyzing whether a plaintiff has adequately alleged either "closed-ended" or "open-ended" continuity. *See, e.g.*, *Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1174–76 (D. Colo. 2006).

### a. *"Closed-Ended" Continuity*.

"A party alleging a RICO violation may demonstrate . . . [closed-ended continuity] by proving a series of related predicates extending over a substantial period of time." *H.J.*, 492 U.S. at 241–42. However, "[p]redicate acts extending over a few weeks or months and *threatening no future criminal conduct* do not satisfy this requirement." *Id.* (emphasis added). Thus, in *Gotfredson*, another division within this Court found that a single seventeen-month-long scheme of "false or fraudulent claims and a sham arbitration" by Aspen, Colorado property owners that was aimed at accomplishing "a discrete goal" (i.e., "garner[ing] a large sum of money from" the contractor-plaintiff working on their properties), which was also "directed at a finite group of individuals" (i.e., only the contractor and his company) and that had "no potential to extend to other persons or entities" was insufficient to allege closed-ended continuity. *Gotfredson*, 432 F. Supp. 2d at 1174–75 (internal quotation marks and citations omitted).

At the heart of the *Gotfredson* court's holding was its conclusion that the scheme appeared to be a "closed-ended series of predicate acts" that was also "limited with respect to the extent the world outside the alleged enterprise was affected." *See id.* (same); *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992). Reaching that holding, the *Gotfredson* court went on to reject two arguments the plaintiffs had made against such a result. *See id.* at 1175. First, it took on plaintiffs' argument that the scheme of illegal activity lasted for three years, and therefore that plaintiffs had alleged a sufficiently substantial time period to satisfy the requirement of pleading closed-ended continuity. *Id.* Rejecting that argument, the court reasoned that defendants' alleged scheme lasted seventeen months at best, but that this length of time was largely irrelevant because the plaintiffs, again, failed to assert any facts that demonstrated that defendants posed a threat of future criminal activity. *Id.*; *see also Boone*, 972 F.2d at 1556 (recognizing that a scheme of repeated criminal activity—federal securities law violations, fraud, and breaches of fiduciary duty—taking place over twenty-three months could, under certain circumstances, "constitute a 'substantial period of time' as envisioned in *H.J.*" but that the court "need not decide [that question] . . . because . . . the facts as alleged fail to show any threat of 'future criminal conduct.'" (internal quotation marks omitted).

The *Gotfredson* court then confronted the plaintiffs' other argument: that the Tenth Circuit in *Resolution Trust Corporation v. Stone* "upheld a finding of closed-ended continuity based on evidence that a jury could infer that the scheme lasted from seven to eight months and up to as many as eighteen months." *See Gotfredson*, 432 F. Supp. 2d at 1175 (discussing *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993)). Addressing that finding of continuity without an apparent future threat, the court distinguished *Resolution Trust*

6

*Corporation* by explaining that the Tenth Circuit in that case had focused in particular on the "extensiveness" of the alleged racketeering in question. *Id.*

The court explained that the *Resolution Trust Corporation* court had found a plausible RICO scheme by focusing on six factors that revealed that the scheme alleged (i.e., fraudulent sale of an investment product known as "enhanced automobile receivables") was quite extensive, "had the potential to extend to other persons and entities[,]" and therefore that it was within the scope of racketeering activities RICO was meant to cover. *See Resolution Trust Corp.*, 998 F.2d at 1544 (distinguishing the Tenth Circuit's holding in *SIL-FLO*, which found continuity had not been met because the scheme alleged was "directed at one individual with no potential to extend to other persons or entities") (quoting *SIL-FLO*, 917 F.2d at 1516); *see also U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1269 (7th Cir. 1990) (finding no continuity where there were no other "potential . . . victims waiting in the wings"). Summarized briefly, the factors the *Resolution Trust Corporation* court used were: "(1) the number of victims, (2) the number of racketeering activities, (3) the variety of racketeering activities, (4) whether the injuries caused were distinct, (5) the complexity and size of the scheme, and (6) the nature or character of the enterprise or unlawful activity." *See Gotfredson*, 432 F. Supp. 2d at 1175 (citing *Resolution Trust Corp.*, 998 F.2d at 1543).

Applying those factors to the scheme at issue in its case, the *Gotfredson* court noted that the contractors' scheme was, by comparison, small and limited with respect to victims and activities, involved neither complex nor large-scale illegal activities, and, at bottom, "constitute[d] a single scheme to accomplish a discrete goal[.]" *Id.* at 1176. Therefore, the court concluded, the two cases were factually far apart. *See id*; *see also Sutherland v. O'Malley*, 882 F.2d 1196, 1204 (7th Cir. 1989) ("[T]he specific facts of each [RICO] case must be examined to

7

determine whether the predicate acts relied upon by the plaintiff establish a threat of continuing racketeering activity."). Thus, the *Gotfredson* court found, the plaintiffs failed to sufficiently allege closed-ended continuity as the Supreme Court and Tenth Circuit had come to define that requirement. *See Gotfredson*, 432 F. Supp. 2d at 1176.

### b. *"Open-Ended" Continuity*.

As explained above, a plaintiff can alternatively meet RICO's "continuity" requirement by sufficiently establishing "open-ended" continuity of the defendants' alleged racketeering. *See H.J.*, 492 U.S. at 241–42. This kind of continuity, according to the Tenth Circuit, "may be established by showing that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise." *See Resolution Trust Corp.*, 998 F.2d at 1543. Furthermore, to establish open-ended continuity, much like how a plaintiff can establish closed-ended continuity, one must sufficiently allege "a clear threat of future criminal conduct." *Gotfredson*, 432 F. Supp. 2d at 1176 (citing *Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 677 (10th Cir. 2005) (unpublished) and *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989)).

Given that requirement, the Tenth Circuit has repeatedly held that "[a] single scheme to accomplish one discrete goal, directed at a finite group individuals, with no potential to extend to other persons or entities, rarely will suffice[.]" *See, e.g.*, *Erikson*, 151 F. App'x at 677; *SIL-FLO*, 917 F.2d at 1515; *Phelps*, 886 F.2d at 1273–74. *See also Gotfredson*, 432 F. Supp. 2d at 1176 (finding that the contractor-plaintiff's allegations failed to establish "open-ended" continuity as well because the plaintiffs had "not alleged that the scheme . . . [was the defendants'] regular way of conducting business" or that their alleged scheme was anything but the kind of discrete and limited scheme described above).

## 2. Plaintiffs' Fail to Sufficiently Allege "Continuity" Under Either Definition.

Here, much like the *Gotfredson* court, I find that plaintiffs' allegations fail to sufficiently allege either closed-ended or open-ended continuity. *See Gotfredson*, 432 F. Supp. 2d at 1174–76. Like the scheme in *Gotfredson* and those in cases where courts have similarly dismissed RICO claims, see, e.g., *SIL-FLO, Inc.*, 917 F.2d at 1516, defendants' alleged racketeering amounts to a single, narrowly-focused scheme conducted in the past to accomplish only one discrete goal—stealing money from plaintiffs, see, e.g., ECF No. 22 at ¶75. It was directed at a finite group of victims (i.e., just Adam Giese and Black Diamond) with no potential to expand beyond those confined limits to hurt any potential victims "waiting in the wings." *See U.S. Textiles*, 911 F.2d at 1269. Simply put, that kind of narrowly-focused, albeit allegedly illicit behavior is not the kind of extensive, continuing racketeering RICO was meant to cover. *See, e.g., H.J.*, 492 U.S. at 241–42; *Resolution Trust Corp.*, 998 F.2d at 1544.

Accordingly, the Court finds that plaintiff has failed to sufficiently allege a RICO violation and that plaintiffs' second claim within their third amended complaint must be dismissed. *See Gotfredson*, 432 F. Supp. 2d at 1176.

## B. No Federal Jurisdictional Predicate Remains, Meaning that the Remainder of Plaintiffs' Third Amended Complaint Must Also Be Dismissed.

Finally, because I find dismissal of plaintiffs' RICO claim is warranted and because the remainder of plaintiffs' operative complaint consists of state law claims, see ECF No. 22 at ¶¶91–93, 103–66, there remains no basis for federal court jurisdiction, see *id.* at ¶¶9–10 (citing 28 U.S.C. § 1331 (federal question jurisdiction) and RICO, 18 U.S.C. § 1965, as providing the bases for subject matter jurisdiction in this case). Therefore, the Court finds that dismissal of the remainder of plaintiffs' second amended complaint is warranted as well. *See United Mine*

*Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

**ORDER**

For the reasons above, the Court GRANTS defendants' motion to dismiss plaintiffs' third amended complaint [ECF No. 39]. Accordingly, the Court dismisses plaintiffs' RICO claim (i.e., Claim Two) with prejudice and dismisses the remainder of plaintiffs' second amended complaint (i.e., Claim One and Claims Three through Fourteen) without prejudice. The Court expresses no opinion concerning the merits of the state law claims. As the prevailing party, defendants are awarded their reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 17th day of April, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge